TEXTO COMPLETO DE LA RESOLUCIÓN
Comparece ante nos Caribbean Petroleum Corporation, en adelante, la peticionaria, solicitando la revisión de una Sentencia Parcial emitida por el Tribunal de Primera Instancia, Sala Superior de Bayamón. Mediante dicho dictamen, el tribunal a quo declaró Con Lugar una “Solicitud de Sentencia Sumaria” instada por Manuel Augusto Colón Cabrera y Melva Correa Miranda, en adelante, los recurridos.
Por los fundamentos que se esbozan a continuación, se deniega la expedición del auto solicitado.
I
Conforme surge del expediente ante nuestra consideración, el 2 de octubre de 2001, los recurridos incoaron Demanda sobre injunction, daños y perjuicios por violación a las leyes de monopolio y por incumplimiento de contrato contra, entre otras partes, la peticionaria. Génesis de la acción incoada lo fue un Contrato de Arrendamiento suscrito entre las partes, de un terreno propiedad del demandante Manuel Augusto Colón Cabrera en donde enclava una estación de gasolina. Posteriormente, y trabada la controversia entre las partes, se instó una Demanda Enmendada y una Segunda Demanda Enmendada. Se alegó, en lo pertinente:

*761
CUARTO: Que el día 27 de septiembre de 1991, mediante la escritura número 43 ante el Notario Alexis D. Mattei Barrios, los demandantes (recurridos) suscribieron un contrato de arrendamiento con la co-demandada CPC (peticionaria) sobre la propiedad descrita en el párrafo primero precedente, incluyendo las edificaciones existentes donde opera un negocio en marcha dedicado a la venta de gasolina, accesorios para vehículos de motor y lubricantes, por el término de quince (15) años. ...

QUINTO: Que en el mismo día y hora en que se firmó la escritura descrita en el párrafo cuarto precedente y como parte del mismo esquema contractual, la co-demandada CPC (peticionaria) subarrendó al co-demandante (recurrido) Manuel Augusto Colón Cabrera la misma propiedad objeto del arrendamiento por el mismo término de quince (15) años. ...

SEXTO: No obstante lo expresado en los párrafos TERCERO, CUARTO y QUINTO precedentes, lo cierto es que las facilidades que comprendían y comprenden la estación de gasolina del demandante (recurrido), incluían un predio de terreno que pertenecía a otra finca del demandante (recurrido), en el que se realizaban actividades de dicha estación, predio que fue más tarde agrupado a la propiedad descrita en el párrafo TERCERO precedente, formándose la finca que a continuación se describe:

SÉPTIMO: Que las cláusulas núm. uno, dos y cinco de la sección que establecen los Términos y Condiciones del referido contrato de arrendamiento disponen lo siguiente:

OCTAVO: Que teniendo la parte demandante (recurrida) el derecho de terminar el contrato de arrendamiento, en virtud de la cláusula número Cinco del contrato de arrendamiento anteriormente referido, el día 7 de abril del año 2000, el co-demandante (recurrido), Manuel Augusto Colón Cabrera, envió una carta a la co-demandada CPC (peticionaria) notificándole su intención de dar por terminado dicho contrato de arrendamiento. ...

NOVENO: Que el día 5 de mayo del 2000 y ante la falta de contestación por la co-demandada CPC (peticionaria) de la carta referida en el párrafo anterior, el co-demandante (recurrido), Colón Cabrera, le envió otra carta a la co-demandada CPC (peticionaria) notificando nuevamente su intención de dar por terminado el contrato de arrendamiento suscrito entre las partes referido anteriormente. ...

DECIMO: Que en respuesta a las cartas referidas en los párrafos OCTAVO y NOVENO precedentes, la co-demandada CPLP y/o CPC (peticionaria) y/o Eric Guzmán contestó las mismas el día ¡7 de mayo del 2000 y en la misma exigió el pago de la suma de $115,000.00 más una suma supuestamente equivalente a la parte proporcional de la inversión adicional realizada, que según ellos ascendía a $62,350.00 para luego de recibidas dichas sumas proceder a realizar los estudios ambientales correspondientes. Esta carta suscrita por Eric Guzmán, confirma que la carta del 5 de mayo de 2000, referida en el párrafo anterior reflejaba la intención del demandante (recurrido) de dar por terminado el contrato y que tanto los estudios como la terminación del contrato estaban condicionados al pago de dicho dinero. ...

DECIMOPRIMERO: Que luego de recibida la carta enviada por CPLP y/o CPC (peticionaria) referida en el párrafo DECIMO precedente, los demandantes (recurridos) le requirieron a CPLP y/o CPC (peticionaria) y/o Eric Guzmán que mostraran evidencia de en que consistía la supuesta inversión adicional reclamada por ellos, sin que finalmente evidenciaran dicha inversión, ignorando las múltiples llamadas y requerimientos a esos efectos.

*762
DECIMOSEGUNDO: Luego de transcurridos varios meses durante los cuales se realizaron múltiples gestiones y negociaciones entre las partes, la co-demandada CPLP y/o CPC (peticionaria) y/o Eric Guzmán accedió a dar por terminado el contrato de arrendamiento suscrito entre las partes sujeto al pago de la cantidad de TRES MIL DOSCIENTOS VEINTE DOLARES CON CERO CENTAVOS ($3,220.00), en concepto del pago total por los 165,912 galones de gasolina necesarios para completar el volumen pactado en el referido contrato de arrendamiento, a cuya condición accedieron los demandantes (recurridos).

DECIMOTERCERO: Que a los fines de cancelar el referido contrato de arrendamiento y luego de la codemandada CPLP y/o CPC (peticionaria) haber preparado varios proyectos de escritura de cancelación de contrato, se llegó a un acuerdo final y las partes acordaron el otorgamiento de la escritura para cancelar el referido contrato de arrendamiento el día 29 de diciembre de 2000, en las oficinas de los codemandados (peticionarios). ..:

DECIMOCUARTO: Que la escritura de cancelación del arrendamiento no se pudo suscribir por razones atribuibles a las actuaciones torticeras, dolosas, culposas y de mala fe de todos los codemandados incluyendo a Eric Guzmán, a pesar de las múltiples gestiones afirmativas del demandante (recurrido) para que se otorgara.

(a)...

DECIMOQUINTO: El contrato de arrendamiento fue cancelado en los libros del Registro de la Propiedad el 20 de octubre de 2003, por orden del Honorable Tribunal de Bayamón de fecha 24 de septiembre de 2003 y la negativa injustificada de CPLP y/o CPC (peticionaria) y/o Eric Guzmán a cancelar dicho contrato, causó daños y perjuicios a la parte demandante (recurrida) calculados los mismos en $1,020,000.00.

(a) ...

DECIMOSEXTO: Que habiéndose tomado los demandados la decisión de dar por terminada la relación contractual entre las partes en el presente caso, procedía que las demandadas, a su costo y cargo, contrataran los servicios de una compañía especializada para que se llevara a cabo un estudio ambiental completo (“site assestment”) en la estación de gasolina objeto del arrendamiento referido en los párrafos precedentes y que se obtuvieran los relevos de las agencias gubernamentales concernidas. Los trabajos ambientales llevados a cabo por la codemandada CPC (peticionaria) hasta este momento no tienen relevancia y/o vigencia, ni son suficientes, por ser de áreas parciales, ni constituyen el estudio completo que dicha compañía está obligada a realizar en la propiedad del demandante (recurrido), conforme al contrato y a las leyes aplicables, ya que no incluyen toda la propiedad arrendada. Irrespectivamente de la fecha de terminación de contrato, las obligaciones contractuales asumidas por la parte demandada, entre las que se encuentra la obligación de entregar la propiedad limpia de contaminación, sobreviven al mismo. Se solicita que se realice dicho estudio y que la compañía que lo realice sea escogida por la parte demandante (peticionaria) y pagada por la parte demandada.

DECIMOSÉPTIMO: Que las co-demandadas CPC (peticionaria) y/o CPLP y/o sus agentes llevaron a cabo ciertas mejoras en la estación de gasolina objeto de esta controversia, habiendo hecho trabajos en pozos sépticos y removido terrenos y en ambos casos, sin la autorización del demandante (recurrido), depositaron los escombros y el terreno removido en un solar adyacente propiedad del demandante (recurrido) Manuel Augusto Colón Carrera, cuyos escombros y terreno removido pueden estar contaminados, ptír lo que es necesario que los estudios ambientales que se lleven a cabo se extiendan a este solar adyacente y en la eventualidad que el mismo esté contaminado, se ordene la limpieza de dicha contaminación.

DECIMOOCTAVO: Es necesario además que los estudios ambientales que se le ordene a la parte demandada (peticionaria) realizar sean amplios y comprensivos, determinando la naturaleza y extensión de la contaminación, tanto horizontal como verticalmente, en el terreno y en las aguas subterráneas, incluyendo 
*763
también la propiedad colindante perteneciente al demandante (recurrido) en la cual depositaron escombros posiblemente contaminados.

DECIMONOVENO:...

VIGÉSIMOPRIMERO: Que los codemandados son responsables de todo lo antes expuesto: (I) al haber obligado al demandante (recurrido), para mitigar daños, a continuar y a permanecer usando los tanques pertenecientes a CPC (peticionaria) y operando una estación de gasolina, en contra de su voluntad, ello debido a la negativa de CPC (peticionaria) por muchos años a cancelar el contrato, lo que impidió al demandante (recurrido) negociar con otras compañías, (2) al obstaculizar la resolución del recurso de Injunction, litigando temerariamente durante varios años y (3) al haberlo obligado a litigar dentro del procedimiento de quiebra radicado por CPC (peticionaria) en los Estados Unidos, habiendo todo ello impedido que el demandante pueda disponer libremente de su propiedad.

(a) En vista de la dilación de la adjudicación del Injunction provocada por la parte demandada y ante la imposibilidad de ejercer la opción de adquirir los tanques conforme a lo pactado, éste amparándose en el derecho que le concede la cláusula 9 del contrato de arrendamiento, exigió el retiro de dichos tanques de su propiedad. La demandada actuando de manera temeraria, ante ese reclamo del demandante, alegó por primera vez que los tanques no le pertenecían, negándose a retirar los mismos. El demandante solicita que se ordene el retiro de dichos tanques y se inicie y concluya el procedimiento de cierre de tanques ante la Junta de Calidad Ambiental.

VIGESIMOSEGUNDO: Que la actitud del codemandado Eric Guzmán y de las co-demandadas Gulf, CPC (peticionaria) y/o CPLP, ante los reclamos de los demandantes para que se cancelara el contrato entre las partes, se lleven a cabo los estudios ambientales correspondientes y se retiren los tanques de su propiedad, ha sido una de indiferencia y apatía que le ha causado y le está causando a los demandantes (recurridos) daños y perjuicios, cuyos daños continúan aumentando por la culpa y negligencia de dichos codemandados, al continuar prolongando injustificadamente esta situación, negándose a realizar los estudios ambientales correspondientes a lo que se comprometieron y negándose a retirar sus tanques. Esta situación deja a los demandantes (recurridos) en una situación equivalente a un embargo de su propiedad que le impide negociar un nuevo contrato con cualquier otra de las compañías petroleras que operan en Puerto Rico, y/o disponer libremente de su propiedad, lo cual también le ocasiona serios daños y perjuicios.

(a) VIGÉSIMOTERCERO:...”.

Véase, Exhibit IV del Apéndice.
A la luz de lo anterior, los recurridos le solicitaron al Tribunal de.Primera Instancia, inter alia, emitiera una orden de entredicho a la peticionaria y a CPLP a fin de que contrataran una compañía especializada en asuntos ambientales que realizara una evaluación ambiental completa en las propiedades. Le peticionaron al foro de instancia que, de dicha investigación revelar alguna contaminación, le ordenara a la peticionaria y a CPLC corregir la misma a su costo, obteniendo los relevos correspondientes de las agencias gubernamentales pertinentes. Los recurridos requirieron, a su vez, se reconociera el derecho que le concedía el Contrato de Arrendamiento de adquirir los tanques soterrados sin compensar económicamente a la peticionaria o se removieran los mismos con costo de los demandados, incluyendo la peticionaria.
Como segunda causa de acción, los recurridos presentaron una acción de daños y perjuicios por discrimen en precios. Señalaron que la peticionaria, así como CPLC y Gulf, le ofrecían a otros detallistas y/o competidores incentivos y descuentos en precios lo que constituía discrimen en precios entre distintos compradores de gasolina. A su vez, solicitaron daños y perjuicios por incumplimiento y violación de Contrato por una suma de tres *764 millones quinientos ochenta y siete mil doscientos treinta y un dólares con noventa y dos centavos ($3,587,231.92).
La peticionaria interpuso alegación responsiva. Así las cosas, y luego de innumerables trámites procesales, el 17 de diciembre de 2007, los recurridos instaron escrito intitulado “Solicitud de Sentencia Sumaria”. Alegaron que su petitorio se fundamentaba en las admisiones de la peticionaria, como resultado de un Requerimiento de Admisiones sometido en mayo de 2007 el cual no contestó. Asimismo, fundamentaban su solicitud en las admisiones expuestas en una Segundo Requerimiento de Admisiones y Autenticidad de Documentos sometido el 13 de agosto de 2007, así'como en las obligaciones asumidas por la peticionaria en el Contrato de Arrendamiento suscrito entre las partes. Avla luz de lo anterior, le señalaron que procedía dictar sentencia sumaria determinando que los tanques que estaban soterrados en la propiedad de los recurridos pertenecían a la peticionaria. Plantearon que los tanques figuraban inscritos en la Junta de Calidad Ambiental a nombre de la peticionaria, y que éstos nunca fueron transferidos a nombre de los recurridos, ni la peticionaria había suscrito algún documento con éstos a fin de transferir su titularidad.
La peticionaria instó debida oposición. Planteó que, ante lo extenso de los Requerimientos de Admisiones cursados, se causaría un grave fracaso a la justicia de dar por admitidos éstos. Sobre la titularidad de los tanques señaló que:
“...dar por admitido el hecho de que los tanques que están soterrados en la propiedad del demandante (recurrido) pertenecen a Caribbean (peticionaria) basado en un tecnicismo procesal resultaría en una contradicción del hecho incontrovertible de que a tenor con la cláusula 9 del contrato de arrendamiento suscrito entre las partes y que es ley entre ellas, los tanques pertenecen al demandante (recurrido) Manuel Augusto Colón Cabrera desde que terminó el contrato, ya que aún tiene posesión de ellos, nunca hizo entrega de los mismos en claro acto de dominio y de aprovechamiento personal. ” (Enfasis en el original.)
Véase, pág. 332 del Apéndice.
Los recurridos instaron réplica. Evaluados los escritos, el 10 de octubre de 2008, notificada el 28 de octubre de 2008, el Tribunal de Primera Instancia emitió la Sentencia Sumaria Parcial. [1] De una lectura a la Sentencia Sumaria Parcial recurrida surge que la misma, a pesar de intitularse Sentencia, no constituye una sentencia parcial final. El tribunal a quo en su determinación no utilizó las palabras requeridas por nuestro ordenamiento jurídico para que ésta constituya una sentencia parcial final a tenor a la Regla 43.5 de las de Procedimiento Civil, 32 L.P. R.A. Ap. III. Dicho foro no concluyó expresamente que no existía razón para posponer dictar sentencia sobre tales reclamaciones hasta la resolución total del pleito, y no ordenó expresamente que se registrara la sentencia, por lo que no encontramos ante una Resolución interlocutoria. Apuntó dicho foro que uno de los aspectos centrales en la adjudicación de la controversia de autos descansaba en la interpretación de la Cláusula 9 del Contrato. Acotó dicho foro que la peticionaria era la dueña de los tanques en controversia, que éstos estaban registrados a su nombre, que las partes nunca han suscrito un Contrato con respecto a los tanques; que la última notificación de los tanques que se hizo a la Junta de Calidad Ambiental aparece a nombre de la peticionaria; que en este caso no se cumplió con el formulario que requiere reglamentación aplicable; que la Escritura de cancelación del arrendamiento nunca se otorgó; que no existían documentos que demostraran un contrato o acuerdo entre el recurrido y la peticionaria o CPLP para el pago por el recurrido de un canon de arrendamiento por el uso de los tanques; que en la carta de 14 de febrero de 2007 que la peticionaria le remitió a la Junta de Calidad Ambiental, la peticionaria no sometió a la agencia evidencia del acuerdo de traspaso de los tanques y/o de aceptación del equipo por parte del recurrido; ni de la notificación de cambio de dueño, Req. #103. A su vez, señaló el Tribunal de Primera Instancia que la peticionaria admitió, además, que no había sometido a la Junta de Calidad Ambiental el formulario que requiere la Regla 802 del Reglamento de Tanques para transferir la titularidad de los tanques al recurrido. Apuntó que era significativo que, en cierto escrito de la peticionaria relacionado a la obligación de realizar estudios ambientales en la propiedad del recurrido, la primera alegó, *765 refiriéndose a uno de los reglamentos de la Junta de Calidad Ambiental: “[d]e un estudio del antes mencionado reglamento no surge la obligación por parte del dueño de los tanques de realizar estudios ambientales en todas aquellas áreas de la propiedad que pudieran estar contaminadas ”, lo que el foro de instancia entendió se refería a la peticionaria. Entendió el tribunal que estas admisiones lo obligaban a concluir que los tanques soterrados pertenecían a la peticionaria.
Insatisfecha con dicha determinación, la peticionaria acude ante nos. Procedemos a resolver.
En su escrito, la peticionaria plantea, en esencia, que erró el Tribunal de Primera Instancia al declarar Con Lugar la moción de sentencia sumaria, ya que la misma no cumple con los requisitos de [a Regla 36 de las de Procedimiento Civil.
III
El auto de certiorari es el vehículo procesal utilizado para que un tribunal de mayor jerarquía pueda corregir un error cometido por un tribunal inferior. Pueblo v. Colón Mendoza, 149 D.P.R. 630, 637 (1999). Se trata de un recurso extraordinario en el que se solicita que este Tribunal ejerza su discreción para corregir un error cometido por el Tribunal de Primera Instancia. Negrón Placer v. Srio. de Justicia, 154 D.P.R. 79 (2001). Distinto a los recursos de apelación, el tribunal de superior jerarquía tiene la facultad de expedir el auto de certiorari de manera discrecional. Es decir, descansa en la sana discreción del foro apelativo el expedir o no el auto solicitado.
Sin embargo, el Tribunal Supremo ha apuntado que la aludida discreción del Foro Apelativo no es absoluta, sino ya que como hemos indicado el mencionado concepto “no significa poder para actuar en una forma u otra, haciendo abstracción del resto del Derecho porque, ciertamente, eso constituiría un abuso de discreción”. Negrón Placer v. Srio. de Justicia, supra; Pueblo v. Ortega Santiago, 125 D.P.R. 203, 214 (1990). Esto es así, ya que “el adecuado ejercicio de la discreción judicial esta inexorable e indefectiblemente atado al concepto de la razonabilidad”. Pueblo v. Ortega Santiago, supra; Pueblo v. Sánchez González, 90 D.P.R. 197, 200 (1964).
En virtud de lo anterior, y con el fin de que el Tribunal de Apelaciones pueda ejercer de forma sabia y prudente su facultad discrecional de entender o no en los méritos de los asuntos que le son planteados mediante el recurso de certiorari, la Regla 40 del Reglamento de ese Tribunal, 4 L.P.R.A. Ap. XXII-A, R. 40, señala los criterios que debe tomar en consideración al atender una solicitud de expedición de un auto de certiorari. Negrón Placer v. Srio. de Justicia, supra. La referida regla dispone lo siguiente, en lo pertinente:

“El Tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de certiorari o de una orden de mostrar causa:

(A)...

(E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

(F) Si la expedición del auto o de la orden de mostrar causa no causa un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

(G)...”.

La denegatoria de un auto de certiorari, no prejuzga los méritos del asunto o la cuestión planteada, pudiendo ello ser reproducido nuevamente mediante el correspondiente recurso de apelación. Núñez Borges v. Pauneto Rivera, 130 D.P.R. 749, 755-756 (1992). En consecuencia, la parte afectada por la decisión que finalmente tome el Tribunal de Primera Instancia, no queda privada de la oportunidad de hacer ante el foro apelativo los *766 planteamientos que entienda procedentes una vez se resuelva el pleito. Ibid.
IV
Dentro del marco jurídico antes enunciado, procedamos a resolver la controversia de autos.
En el caso de autos, la peticionaria nos señala que la solicitud de sentencia sumaria instada por el recurrido no cumple con los parámetros de la Regla 36 de las de Procedimiento Civil. Apunta que de la Segunda Demanda Enmendada se desprende que se solicitaron como remedios una solicitud de interdicto preliminar y permanente dirigido a que la peticionaria realizara una investigación completa de la propiedad y que, de acuerdo a los resultados de dicha evaluación, y de haber contaminación, corregir la misma; que le reconociera el derecho que le concede el Contrato de Arrendamiento de adquirir los tanques soterrados sin compensar a la peticionaria, o en la alternativa, a opción del recurrido, que ordenara la remoción de los mismos; y por último, que ordenara a la peticionaria la cancelación del Contrato de Arrendamiento.
Es contención de la peticionaria que la Cláusula 9 del Contrato es clara en cuanto a que los recurridos podían retener los tanques o los entregaba a ella.
Comencemos apuntando que el caso de autos data del año 2001. Luego de innumerables trámites procesales, que incluyeron la presentación de cerca de ocho (8) recursos de certiorari, relacionados a incidentes interlocutorios, ante este Tribunal y un recurso en el Tribunal Supremo donde media una opinión de dicho Foro, el Tribunal de Primera Instancia fraccionó las controversias ante su consideración. A tales efectos, en un dictamen interlocutorio, determinó lo relacionado a la titularidad de los tanques dejando las demás controversias para ser dilucidadas, posteriormente. Nada hallamos en el dictamen que denote abuso de discreción al así hacerlo y que amerite intervenir, en esta etapa. De hecho, el dictamen emitido de manera sumaria, el cual no es final por lo antes expuesto, revela el interés del magistrado de instancia de manejar el caso hacia una resolución final.
Evaluado el recurso ante nuestra consideración a la luz de lo dispuesto en la Regla 40 del Reglamento del Tribunal de Apelaciones, supra, somos de opinión que nuestra intervención dilataría el trámite del caso. Nuestra intervención en esta etapa del procedimiento causaría un fraccionamiento indebido del pleito y una dilación innecesaria en la solución final del caso, que lleva siete (7) años litigándose.
Conforme reseñado, la denegatoria de expedir un auto de certiorari, no constituye una adjudicación en los méritos y es el ejercicio de la facultad discrecional del Tribunal Apelativo para no intervenir a destiempo con el trámite pautado por el foro de instancia, evitando que se dilate innecesariamente la resolución final del pleito. Regla 40 del Reglamento del Tribunal de Apelaciones, supra', Filiberty v. Soc. de Gananciales, 147 D.P.R. 834, 838 (1999).
En resumen, la manera más rápida de resolver el caso que lleva más de siete (7) años litigándose, es celebrándose la vista en sus méritos y dictándose sentencia. La parte afectada por la decisión final del tribunal, podrá presentar ante este Tribunal los planteamientos que entienda procedentes, una vez resuelto finalmente el pleito. Id.
V
Por los fundamentos que anteceden, se deniega la expedición del auto solicitado.
Así lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.
María Elena Pérez Ortiz Secretaria del Tribunal de Apelaciones
*767 ESCOLIO 2009 DTA 20

1. La Regla 43.1 de las de Procedimiento Civil de Puerto Rico, 32 L.P.R.A. Ap. Ill, R. 43.1, define sentencia como cualquier determinación del Tribunal de Primera Instancia que resuelve finalmente la cuestión litigiosa de la cual pueda apelarse.
Según ha interpretado el Tribunal Supremo, una sentencia es final o definitiva cuando resuelve él caso en sus méritos y termina el litigio entre las partes, en forma tal que no queda pendiente nada más que la ejecución de la sentencia. Cárdenas Maxán v. Rodríguez, 119 D.P.R. 642, 655 (1987).
No obstante, existen ciertas circunstancias donde se puede considerar como una sentencia final aquella que adjudica parte de la controversia planteada. A tales efectos, la Regla 43.5 de las de Procedimiento Civil dispone:

“(c) cuando un pleito comprenda más de una reclamación, ya sea mediante demanda, reconvención, demanda contra coparte o demanda contra terceros o figuren en él partes múltiples(,) el tribunal podrá dictar sentencia final en cuanto a una o más de las reclamaciones o partes sin disponer de la totalidad del pleito, siempre que concluya expresamente que no existe razón para posponer dicha sentencia sobre tales reclamaciones o partes hasta la resolución total del pleito, y siempre que ordene expresamente que se registre sentencia.

Cuando se haga la referida conclusión y orden expresa, la sentencia parcial dictada será final para todos los fines en cuanto a la controversia en ella adjudicada, y una vez registrada y se archive en autos copia de su notificación, comenzarán a correr los términos dispuestos en la Regla 47, 48 y 53.

En ausencia de la referida conclusión y orden expresa, cualquier orden o cualquier otra forma de decisión, no importa cómo se denomine, que adjudique menos del total de las reclamaciones o los derechos y obligaciones de menos del total de las partes, no terminará el pleito con respecto a ninguna de las reclamaciones o partes y la orden u otra forma de decisión estará sujeta a reconsideración por el tribunal que la dicte en cualquier momento antes de registrarse sentencia adjudicando todas las reclamaciones y los derechos y obligaciones de las partes. ”

32 L.P.R.A. Ap. Ill, R. 43.5.
Sin embargo, un tribunal puede dictar durante el transcurso de un pleito una resolución de carácter interlocutorio. El Tribunal Supremo de Puerto Rico citando con aprobación a Hiram Sánchez Martínez indicó que la resolución es aquella:

“decisión en la cual se adjudica un incidente respecto al procedimiento o a los derechos y obligaciones de algún litigante o en cuanto a algún aspecto de la reclamación o reclamaciones que se dilucidan en el proceso, bien sea antes o ya sea después de dictarse la sentencia. ”

En virtud de lo anterior, “no es el nombre lo que determina si tal dictamen es una resolución o es una sentencia. Un dictamen judicial puede titularse sentencia y ser realmente una resolución y viceversa”. Hiram Sánchez Martínez, op.cit., a las págs. 351-352. A esos efectos, este Tribunal ha señalado que “si un tribunal dicta una resolución, pero ésta verdaderamente pone fin a todas las controversias entre las partes, se constituye en una sentencia final de la cual puede interponerse recurso de apelación ”. (Citas omitidas)
De igual forma, si el tribunal dicta una sentencia parcial que no cumple con los requisitos de la Regla 43.5 de Procedimiento Civil, 32 L.P.R.A. Ap. Ill, R-43.513, la sentencia dictada por no ser final no es apelable, sino que es una resolución que sólo puede ser revisada mediante recurso de certiorari.”
García v. Padró, res. en 14 julio de 2005, 165 D.P.R. _ (2005), 2005 J.T.S. 110.
No es hasta que exista una sentencia final o sentencia parcial final que comienzan a decursar los términos dispuesto en las Reglas de Procedimiento Civil para los remedios o procedimientos posteriores a la sentencia.