*755 TEXTO COMPLETO DE LA SENTENCIA
Comparece el Sr. Justino González Santiago, (en adelante recurrente) mediante un escrito de Revisión Judicial Administrativa o Petición de Auto Discrecional de Mandamus. Solicita se tome nota de una serie de incumplimientos a alegados deberes ministeriales incurridos por oficiales de la Administración de Corrección (en adelante recurrida), se les ordene llegar a un acuerdo y notificárselo. También solicita Revisión Administrativa de una determinación final y firme del Programa de Remedios Administrativos de 18 de agosto de 2008, en el caso QZA-748-09. Evaluado el recuso del recurrente, el Escrito en Cumplimiento de Orden de la Administración de Corrección y la Réplica a Escrito del Estado, resolvemos MODIFICAR y CONFIRMAR la Resolución recurrida. Exponemos.
I
El recurrente se encuentra actualmente confinado en el Campamento Zarzal del Municipio de Río Grande, Puerto Rico. En su escrito inicial alega extinguir una pena de dos (2) años y tres (3) meses por delitos de Tentativa de Robo y Restricción a la Libertad. Procede a relacionar los deberes ministeriales alegadamente incumplidos por la parte recurrida. En cuanto al Negociado de Rehabilitación y Tratamiento de la Administración de Corrección, le imputa haber incumplido en ofrecer terapias de modificación de conducta o practicarle una “evaluación psicológica”, la cual es requerida para ser considerado por la Junta de Libertad Bajo Palabra y todos los programas de desvío.
A la Administración de Corrección le imputa haber violado su Ley Habilitadora al no haberle ofrecido ningún programa de desvío y rehabilitación comunitaria, a pesar de que éste ha extinguido el cincuenta por ciento (50%) de su Sentencia impuesta.
A la Junta de Libertad Bajo Palabra le imputa no haber ejercido su jurisdicción adecuadamente sobre su *756 caso, a pesar de éste haber sobrepasado por mucho el cincuenta por ciento (50%) de la Sentencia impuesta, lo cual es violatorio de la Sección 1503 del Título 3 L.P.R.A. Igualmente se ha incumplido el Reglamento Núm. 6866 de 24 de agosto de 2004. Admite, sin embargo, haber sido entrevistado por un Oficial Examinador de la Junta, el 26 de junio de 2009, pero no se le ha informado el resultado. Dicha Junta tampoco ha contactado a la parte perjudicada por los delitos cometidos por el peticionario, para que éstos den su parecer sobre la concesión del privilegio solicitado, y ha violentado su Ley Habilitadora y el caso de Efraín Montero Torres v. Hernández Colón, (78-828 en la Corte Federal para el Distrito de Puerto Rico), al no evaluar y notificar su determinación al peticionario.
Se le imputa al Programa de Comunidad de la Región de Caguas, adscrita a la Administración de Corrección, no haber realizado la correspondiente investigación de campo sobre el Plan de Salida propuesto por el recurrente, que incluya la oferta de empleo propuesta al amigo consejero, la residencia propuesta, etc. Ello retrasa la salida en libertad condicionada al recurrente.
También reclama que la Administración de Corrección y el Departamento de Servicios Municipales no han dado cumplimiento a la Ley 175 de 1998, que requiere se le tome una muestra de ADN a todo convicto que potencialmente sea elegible para participar de Programas de Desvío o Libertad Bajo Palabra, bajo la excusa de que no tienen disponibles los llamados “kits” para la toma de esta prueba.
El recurrente reclama que el Programa de Desvío de la Administración de Corrección no le ha contestado su solicitud para Supervisión Electrónica y lleva alrededor de ocho (8) meses en espera de una contestación.
Finalmente, el recurrente reclama que le han violentado su derecho constitucional a rehabilitarse moral y económicamente al amparo de la sección 19 del Artículo VI de la Constitución del Estado Libre Asociado y la Ley Núm. 377 de 24 de septiembre de 2004 (Ley del Mandato Constitucional de Rehabilitación), la parte recurrida. Por ello solicita mediante Mandamus se le ordene a la parte recurrida cumplir sus obligaciones ministeriales de Ley y Reglamentos.
Con respecto a la Revisión Administrativa solicitada, el recurrente impugna la Resolución de Reconsideración a la solicitud de éste como apelante en el caso QZA-748-9. Esta resolución relaciona las denegatorias emitidas por varias entidades a la solicitud de servicios del recurrente. Ejemplo de ello fue la evaluación de su caso en los Hogares CREA, en los Hogares Cristianos, en el Programa de Pases Extendidos y el Programa PIRCO de Supervisión Electrónica.
La parte recurrida, por su parte, nos plantea que el Mandamus solicitado por el recurrente, no procede, ni desde el punto de vista procesal, ni desde la perspectiva sustantiva. En lo procesal porque el auto de Mandamus es uno altamente privilegiado, dirigido a compeler a un funcionario o persona específica a realizar un acto o cumplir con un mandato de ley, y en su escrito, el recurrente no dirige su reclamo a un funcionario en específico. Tampoco está jurado ni se ha emplazado a la parte recurrida.
En los sustantivo, la resolución recurrida relaciona un inventario de referidos a entidades externas a la Administración de Corrección y Programas de Desvío adscritos a ésta, los cuales consideraron y denegaron dicho referido. [1] En cuanto al reclamo al Negociado de Tratamiento y Rehabilitación por éste no haber ofrecido terapias de modificación de conducta o practicado la evaluación psiquiátrica requerida por la Junta de Libertad Bajo Palabra y todos los programas de desvío para considerar su caso, se provee una información que derrota tal reclamo.
Según el expediente de la Junta de Libertad Bajo del confinado, se desprende que el 12 de agosto de 2009, el Comité de Clasificación y Tratamiento de la Administración de Corrección remitió a la Junta Informe de Ajuste y Progreso del Confinado, así como el Informe del Negociado de Rehabilitación y Tratamiento. El *757 Informe de Ajuste y Progreso tiene fecha de 28 de julio de 2009 y el Informe del Negociado de Rehabilitación y Tratamiento es de 24 de julio de 2009. Surge del Informe de Ajuste y Progreso que el confinado fue referido al Negociado de Evaluación y Asesoramiento (NEA), pero que actualmente dicha área no cuenta con el personal necesario para revisar las evaluaciones, por lo que éstas no se han podido constatar.
En cuanto a la alegación de que la Administración de Corrección ha incumplido su deber ministerial al no referirlo a ningún programa de desvío y rehabilitación comunitaria y que la Junta de Libertad Bajo Palabra no ha tomado jurisdicción sobre éste, según surge de la resolución recurrida y el Informe de Libertad Bajo Palabra, el confinado fue referido a Hogares CREA, Hogares Cristianos, Pase Extendido, PIRCO (supervisión electrónica) y fue evaluado por la Junta de Libertad Bajo Palabra en Vista de Consideración celebrada el 6 de junio de 2009. [2]
En cuanto al reclamo de que el Programa de Supervisión Electrónica no le ha contestado su solicitud y que éste lleva ocho (8) meses en espera de la determinación, la resolución recurrida da cuenta de que el confinado fue evaluado por PIRCO el 15 de julio de 2009 y dicho privilegio fue denegado. Sobre el reclamo de que la Junta de Libertad Bajo Palabra ha incumplido al no notificar ni contactar a la parte perjudicada por los delitos cometidos por el peticionario para que emitan su opinión sobre solicitud para la concesión del privilegio, la hoja de requerimiento de documento para la Vista de Consideración de la Junta, refleja que ésta solicitó el informe completo de Libertad Bajo Palabra con Plan de Salida Corroborado y Entrevistado a Víctimas, de ser ello aplicable a su caso.
En cuanto a la alegación de que la Administración de Corrección y el Departamento de Servicios Municipales han descartado el cumplimiento con la Ley 175 de 1998 que requiere que se tome una muestra de ADN a todo convicto que potencialmente sea elegible para participar en programas de desvío o de libertad bajo palabra, se destaca que el 11 de agosto de 2009, se le tomó la muestra de ADN al confinado. [3]
Sobre la alegación de que no se ha realizado la correspondiente investigación de campo del Plan de Salida propuesto por el recurrente para poder ser evaluado por la Junta de Libertad Bajo Palabra o la División de Desvío de la Administración de Corrección, se destaca que el referido plan fue evaluado como parte del Informe de Libertad Bajo Palabra realizado el 6 de mayo de 2009. [4]
Pasando a la Solicitud de Revisión Administrativa solicitada en cuanto a la Resolución de 18 de agosto de 2009, de la Coordinadora Regional de la División de Remedios Administrativos de la Administración de Corrección, la parte recurrida sostiene que ésta está sostenida por evidencia sustancial que obra en el expediente administrativo, por lo que debe ser sostenida. En dicha resolución se le informó al confinado todas las gestiones realizadas por el Programa de Desvíos Administrativos de la Administración de Corrección en su caso. Éste no ha rebatido su corrección, ni formuló en su escrito, señalamiento de error alguno, ni desarrolló argumentación alguna para controvertir sus determinaciones. Por tanto, éstas deben ser sostenidas.
Con posterioridad a que la parte recurrida sometiera su “Escrito en Cumplimiento de Orden”, el recurrente sometió un escrito de “Réplica al Escrito del Estado”, en el cual refuta varios de los señalamientos de la parte recurrida. No obstante, el planteamiento de mayor peso del recurrente es que rechaza que el Programa de Supervisión Electrónica de la Administración de Corrección le haya denegado su solicitud porque el hogar propuesto alegadamente “no cuenta con un sistema telefónico”, puesto que dicha residencia cuenta con una línea telefónica “en uso” hace más de 4 años y provee el teléfono (787) 747-5923 para verificación.
Hace énfasis en que “sólo le restan alrededor de seis (6) meses para extinguir en reclusión la totalidad de la Sentencia”, por lo que solicita la re-evaluación de su caso para poderse reunir con su esposa y su única hija en el seno de su hogar y contribuir a la manutención de ésta con su esposa mientras es supervisado por el Estado por métodos electrónicos.
*758 Contando con la comparecencia de ambas partes y luego de analizar detenidamente las acciones administrativas consignadas, resolvemos a continuación:
n
Derecho Aplicable
A. El Mandamus
La acción de Mandamus se rige por la Regla 55 de Procedimiento Civil, 32 L.P.R.A., Apéndice III, R. 55, y 32 L.P.R.A. see. 3421 y siguientes.
Como se sabe, el recurso de Mandamus es un auto discrecional y altamente privilegiado mediante el cual se ordena a una persona o personas naturales, en este caso a un funcionario público, el cumplimiento de un acto que en dicho auto se exprese y que esté dentro de sus atribuciones o deberes. 32 L.P.R.A. see. 3421. Este recurso “está concebido para obligar a cualquier persona, corporación, junta o tribunal inferior a cumplir un acto que la ley particularmente le ordena como un deber resultante de un empleo, cargo o función pública, cuando ese deber no admite discreción en su ejercicio, sino que es ministerial”. David Rivé. “El Mandamus en Puerto Rico”, 46 Rev. C. Abo. PR 15, 19 (1985). [5]
Entre los factores a tomarse en consideración cuando se solicita de un tribunal la expedición de un auto de Mandamus, están: el posible impacto que éste pueda tener sobre intereses públicos que puedan estar envueltos; el evitar una intromisión indebida en los procedimientos del poder ejecutivo, y que el auto no se preste a confusión o perjuicios de los derechos de terceros. Lutz v. Post Gobernador de Puerto Rico, 14 D.P.R. 860 (1908). El factor de mayor importancia y peso es el del posible impacto al interés público. A.P.P.R. v. Tribunal Superior, 103 D.P.R. 903, 906 (1975); D. Rivé, Recursos Extraordinarios, Programa de Educación Legal Continuada de la Universidad Interamericana de Puerto Rico, Facultad de Derecho 1989. Como indica Rivé, op cit., pág. 101.: “[A]ntes de radicarse la petición de Mandamus, la jurisprudencia requiere, como condición esencial, que el peticionario le haya hecho un requerimiento previo al demandado para que éste cumpla con el deber que se le exige, debiendo alegarse en la petición, tanto el requerimiento como la negativa, o la omisión del funcionario en darle curso. Sólo se exime de este requisito: 1) cuando aparece que el requerimiento hubiese sido inútil e infructuoso, pues hubiese sido denegado o si se hubiera hecho; ó 2) cuando el deber que se pretende exigir es uno de carácter público; a diferencia de uno de naturaleza particular que afecta solamente el derecho del peticionario”. [6] La Ley estableciendo el auto de Mandamus exige que el auto lo solicite la parte beneficiada o interesada en los actos cuya ejecución se trate de obtener por virtud de tal procedimiento, 25 L.P. R.A. see. 3423, por lo que no existe problema de standing, pues la acción sólo la puede ejecutar la parte verdaderamente interesada. Rivé, op cit, pág. 99.
De igual forma, el recurso de Mandamus permite exigir que un funcionario no acate o cumpla con una ley o actuación gubernamental cuando su cumplimiento quebranta un deber ministerial de superior jerarquía, como lo sería un deber ministerial impuesto por la Constitución del Estado Libre asociado. Véanse, Bailey v. MacDougall, 66 Misc. 2d 161, 320 N.Y. 2d. 271 (1970) (“relief in the nature of mandamus may be granted to compel a public body or officer to regrain clear mandate of law”, en la pág. 163); In the Matter of New York Post Corporation, 2 N.Y. 2d 677 (1957) (“relief in the nature of mandamus may be granted to compel a public body or officer to refrain from taking particular administrative action in contravention of a clear mandate of law, even though the immediate relief sought is of a preventive rather than an affirmative nature”, en la pág. 684); Forrest G. Ferris, The Law of Extraordinary Legal Remedies, pág. 227 (1926). De existir un deber legal que contravenga una obligación constitucional, el primero ha de ceder ante la Ley Suprema. Vargas v. Chardón, 405 F. Supp. 1348 (1975).
La exigencia de un deber ministerial definido no impide ni exime a los tribunales de la obligación de *759 interpretar la Constitución y las leyes. La procedencia del auto de Mandamus no está proscrita por el hecho de que se requiera una interpretación judicial del deber ministerial invocado. Rosad v. Haran, 459 F. Supp. 1148 (1977) (“[Mjandamus wil not be precluded solely because judicial construction is required to clarify the duty. Thus, Mandamus will lie not only where a federal officer has failed to comply with a specific statutory or regulatory directive, but also where constitutionally mandated duty has not been performed”, en la pág. 1151); véanse además, Milwaukee County, 525 N.W. 2d. 768, 775 (1994); State v. Thomson, 37 A. 2d 689, 692 (1944).
La Regia 55, al igual que el Artículo 4.006 de la Ley de la Judicatura, dispone que el Tribunal de Apelaciones tendrá jurisdicción para atender recursos de Mandamus. La Regla 54 del Reglamento de Apelaciones dispone que estos procedimientos se regirán por la reglamentación procesal civil, leyes especiales y estas reglas. La Regla 55 establece el contenido del escrito.
Como ya hemos mencionado, el deber que pretende poner en práctica el Mandamus tiene que ser un deber de naturaleza ministerial, que no requiere discreción para ser cumplido. Báez Galib y otros v. C.E.E., 152 D.P.R. 382 (2000); Noriega v. Hernández Colón, 135 D.P.R. 406 (1994).
El Mandamus sólo debe emitirse cuando el peticionario carece de otro remedio adecuado en ley. Pueblo v. Mojica Cruz, 115 D.P.R. 569 (1984); Dávila v. Superintendente de Elecciones, 82 D.P.R. 264 (1961). No debe utilizarse cuando el peticionario no ha agotado los remedios disponibles en ley para resolver el caso que plantea en su solicitud. Alvarez de Choudens v. Tribunal Superior, 103 D.P.R. 235 (1975).
B. Revisión Judicial de decisiones correccionales
Conforme a las expresiones de la Corte Suprema de los Estados Unidos de América, en Bell v. Wolfish, 441 U.S. 540 (1979), y Hewitt v. Helms, 459 U.S. 469 (1983), nuestro Tribunal Supremo ha reconocido que las autoridades correccionales gozan de una gran discreción y merecen deferencia por parte de los tribunales cuando una parte alegadamente afectada puede revisar judicialmente sus actuaciones. Cruz v. Administración, 164 D.P.R. 341 (2005).
Sabido es que el estándar de revisión judicial en materia de decisiones administrativas se circunscribe a determinar si existe una base racional respaldada por evidencia sustancial que sostenga la decisión o interpretación impugnada. Ley de Procedimiento Administrativo Uniforme, See. 4.5, 3 L.P.R.A. see. 2175; Rebollo v. Yiyi Motors, 161 D.P.R. 69 (2004). A estos fines, “evidencia sustancial” es aquella relevante que una mente razonable podría aceptar como adecuada para sostener una conclusión. Federación v. Ebel, 2008 J.T.S. 8, 172 D.P.R._(2007). Si la totalidad del expediente administrativo sostiene las determinaciones adoptadas por la agencia, los tribunales no deben sustituirlas por su propio criterio. Rebollo v. Yiyi Motors, supra.
Así las cosas, la revisión judicial de una decisión administrativa suele circunscribirse a determinar: (1) si el remedio concedido por la agencia fue apropiado; (2) si las determinaciones de hechos de la agencia están sostenidas por evidencia sustancial que obra en el expediente administrativo; y (3) si las conclusiones de derecho fueron correctas. Pacheco v. Estancias de Yauco, 160 D.P.R. 409 (2003). Esto significa que las decisiones de las agencias administrativas tienen a su favor una presunción de legalidad y corrección que debe respetarse por los tribunales, siempre que estén sostenidas, como exige la ley, por evidencia sustancial que surja del expediente administrativo considerado en su totalidad. Metropolitana S.E. v. A.R.P.E, 138 D.P.R. 200, 213 (1995); Fac. C. Soc. Aplicadas v. C.E.S., 133 D.P.R. 521, 532 (1993).
C. Facultad de la Administración de Corrección para reglamentar a los fines de adelantar su interés apremiante de preservar la seguridad pública.
En cumplimiento del mandato constitucional esbozado en Art. VI, sección 19, de nuestra Constitución,.la *760 Legislatura aprobó el Plan de Reorganización Núm. 3 de 1993, mediante el cual estableció el esquema estructural del Departamento de Corrección y Rehabilitación como un sistema centrado en dos (2) objetivos básicos: proteger a la sociedad y contribuir a la seguridad pública; y rehabilitar a los confinados y a los transgresores en las instituciones y en los programas de la comunidad. Véase, Art. 1, Plan de Reorganización Núm. 3 de 1993. De conformidad con dicho Plan, el Departamento de Corrección y Rehabilitación es el organismo de la Rama Ejecutiva responsable de implantar la política pública relacionada con el sistema correccional y de rehabilitación de adultos y jóvenes y de integrar, planificar y desarrollar en forma coordinada los planes, operaciones, servicios y recursos de los organismos que lo componen. Véase 3 L.P.R.A. Ap. VI, Artículo II. El Legislador delegó en el Secretario de dicho Departamento la autoridad para poner en vigor la política pública del Estado en tomo al sistema correccional. Véase 3 L.P.R.A. Ap. VI, Artículo IV (c). Además, le facultó adoptar, establecer, desarrollar, enmendar, derogar e implantar reglas, normas y procedimientos para el funcionamiento efectivo del Departamento y de los organismos bajo su jurisdicción y para regir la seguridad y la disciplina intema del sistema. Véase, 3 L.P.R.A. Ap. VI, Artículo IV (g).
Uno de los componentes organizacionales del Departamento de Corrección y Rehabilitación es la Administración de Corrección. Véase, 3 L.P.R.A. Ap. VI, Artículo V (a). Dicho organismo fue creado mediante la Ley Núm. 116 de 22 de julio de 1974, la cual establece cuáles son las facultades que le ha delegado el Legislador a su Administrador, a los efectos de ejecutar la política pública correccional en nuestro sistema. Véase, 4 L.P.R.A. sees. 1101-1284.
Es sabido que las instituciones penales tienen el propósito de mantener la custodia de personas que han cometido delito y que de esta forma se protege la sociedad y, a la vez, se establecen controles para ayudar al convicto en su proceso de rehabilitación. Las instituciones penales mantienen la custodia de personas que tienen restringida su libertad y el ejercicio de sus derechos está limitado y relacionado con otros importantes intereses sociales de protección a la sociedad, a otros confinados y al propósito de rehabilitación. Por su conocimiento especializado sobre la materia, la Administración de Corrección y las autoridades carcelarias poseen amplia discreción para poner en vigor las disposiciones reglamentarias necesarias a fin de lograr la rehabilitación de los confinados y de mantener la seguridad institucional y general. Por ello, las determinaciones de la agencia gozan de la presunción de corrección y merecen gran deferencia. Cruz v. Administración, 164 D.P.R. 341 (2005).
D. Reglamento para atender solicitudes de remedios administrativos
La Administración de Corrección cuenta con un programa para atender las solicitudes de remedios administrativos radicadas por los miembros de la población penal. (Reglamento Número 7219 de 26 de septiembre de 2006). Dicho reglamento se promulgó al amparo de la ley 116 de 22 de julio de 1974, según enmendada. Así, la Administración de Corrección dio cumplimiento a las disposiciones de la Ley Pública 96-2426 conocida como Civil Rights of Institutionalized Persons Act. Los objetivos del Programa de Remedios Administrativos incluyen resolver de forma efectiva los reclamos de la población correccional, velar por el cumplimiento de los deberes y obligaciones creadas por leyes y reglamentos que apliquen a la Administración de Corrección, así como toda persona recluida en una institución correccional de Puerto Rico. El mecanismo que se utiliza bajo este Reglamento para que los miembros de la población correccional canalicen sus reclamos opera de la manera siguiente: El miembro de la población correccional presenta una queja o solicitud por escrito, en la que plantea la situación que afecta su seguridad personal y su calidad de vida en el área de confinamiento o de convivencia institucional. La Oficina del Director del Programa de Remedios Administrativos atiende la queja o solicitud presentada por el miembro de la población correccional. El director delega en recopiladores encargados de recibir las solicitudes de remedios, revisiones, apelaciones y reconsideraciones presentadas por el miembro de la población correccional. Estas personas dan el trámite correspondiente y realizan, por encargo del evaluador o el coordinador regional, aquellas gestiones dirigidas a conseguir que se resuelva el planteamiento del miembro de la población correccional. Estas recomendaciones son acogidas por el director regional, quien a su vez las formula al director del programa, quien las evalúa y las *761 hace suyas. Posteriormente son notificadas al miembro de la población correccional, quien podrá solicitar revisión judicial de éstas ante el Tribunal de Apelaciones, conforme a lo dispuesto por la Ley de Procedimiento Administrativo Uniforme (LPAU) y la Ley de la Judicatura. [7]
bu
El recurrente ataca la acción gubernamental en dos dimensiones. Le imputa a varias dependencias de la Administración de Corrección no tomar acción sobre sus solicitudes de participación en programas públicos y privados, en violación al deber ministerial que le imponen leyes y reglamentos. No particulariza, sin embargo, determinado funcionario causante de tal violación y más bien levanta un señalamiento crítico genérico. Ello de por sí, derrota la esencia misma del recurso extraordinario de Mandamus, que precisamente está predicado en obligar a una persona o funcionario público, a dar cumplimiento a un acto que la ley expresamente le ordena como resultado de su cargo o empleo.
Específicamente, el querellante acusa que el Negociado de Rehabilitación y Tratamiento no le ha ofrecido terapias de modificación de conducta, ni le ha practicado una evaluación psicológica, la cual es requerida por la Junta de Libertad Bajo Palabra y otros Programas de Desvío. Este señalamiento se derrota por la información ofrecida por la recurrida en su alegato, de que surge del expediente del recurrente en la Junta de Libertad Bajo Palabra, que el 12 de agosto de 2009, el Comité de Clasificación y Tratamiento de la Administración de Corrección remitió a la Junta el Informe de Ajuste y Progreso del confinado, así como el Informe de Rehabilitación y Tratamiento. [8] Surge del Informe de Ajuste y Progreso que el confinado fue referido al Negociado de Evaluación y Asesoramiento, pero que actualmente dicha área no cuenta con el personal necesario para revisar las evaluaciones, por lo que no han podido evaluar su referido. Sobre este extremo, somos de opinión que dicho negociado (NEA) debe calendarizar en su plan de trabajo una revisión del caso del recurrente en el término de treinta (30) días a partir de la notificación de este dictamen, para que le brinde una contestación adecuada y concreta en tomo a su elegibilidad para beneficiarse de determinados programas de corrección.
El segundo señalamiento de alegado incumplimiento ministerial está dirigido a la Administración de Corrección al alegadamente no haberle ofrecido al recurrente ningún programa de desvío y rehabilitación comunitaria. Este señalamiento tampoco se sostiene, ya que surge de la misma resolución recurrida que el aquí recurrente fue referido por personal de la Administración de Corrección recurrida a los Hogares CREA, (en 23 de septiembre de 2008 - denegado), a Hogares Cristianos (en octubre de 2008 - denegado), al programa de Pases Extendidos (en 10 de junio de 2009 - pendiente), y al Programa de Supervisión Electrónica (en 15 de julio de 2009 - denegado).
El tercer señalamiento de alegado incumplimiento ministerial está dirigido a la Junta de Libertad Bajo Palabra, a la que le imputa no haber ejercido adecuadamente su jurisdicción en su caso, a pesar de éste haber sobre pasado por mucho el cincuenta por ciento (50%) de la Sentencia impuesta. Tal señalamiento se derrota por la propia admisión del recurrente en su escrito, de que fue entrevistado por un oficial examinador de la Junta de Libertad Bajo Palabra el 26 de junio de 2009. Alega, sin embargo, que no se le ha notificado el resultado de la entrevista. La parte recurrida nos informa en su alegato que el recurrente fue evaluado por la Junta de Libertad Bajo Palabra en Vista de Consideración celebrada el 6 de junio de 2009.
El cuarto señalamiento de alegato incumplimiento ministerial radica en que la Junta de Libertad Bajo Palabra no ha contactado a la parte perjudicada por los delitos cometidos por él, para que den su parecer y participen en la evaluación de la solicitud del privilegio de libertad bajo palabra. Este señalamiento es rebatido efectivamente por la parte recurrida, cuando nos indica que surge de la hoja de requerimiento de documentos para la Vista de Consideración de la Junta, que ésta solicitó el Informe Completo de Libertad Bajo Palabra con Plan de Salida Corroborado y Entrevista a Víctimas, de ser ello aplicable.
*762 El quinto señalamiento de alegado incumplimiento ministerial está dirigido al Programa de Comunidad de la Región de Caguas, de la Administración de Corrección. El recurrente alega que este programa no ha hecho la investigación de campo correspondiente, sobre su plan de salida, oferta de empleo, amigo consejero y residencia propuesta, lo cual retrasa su libertad condicionada. La información ofrecida por la recurrida de que en la evaluación de su caso ante la Junta ésta requirió un informe completo de Libertad Bajo Palabra, que incluía la corroboración del Plan de Salida Propuesto, da al traste con el señalamiento del recurrente. De hecho, éste admitió en su escrito que fue entrevistado por un examinador de la Junta el 26 de junio de 2009.
El sexto señalamiento de alegado incumplimiento ministerial está dirigido a la Administración de Corrección y el Departamento de Servicios Municipales. Alega el recurrente que se ha violentado la ley al no haberle tomado muestras de ADN para ser elegible a programas de desvío o libertad bajo palabra, bajo la excusa de que no estaban disponibles los “kits” para la toma de la muestra. Tal alegación no se sostiene, pues surge del alegato de la recurrida que el 11 de agosto de 2009, se le tomó la muestra de ADN al confinado.
El séptimo señalamiento de alegado incumplimiento ministerial radica en que el Programa de Supervisión Electrónica no le ha contestado su solicitud y éste lleva ocho (8) meses en espera de la determinación. A este señalamiento, la recurrida da cuentas en su escrito, que el confinado fue evaluado para el Programa de Supervisión Electrónica (PIRCO) el 15 de julio de 2009 y que dicho privilegio le fue denegado. No obstante, surge de la propia resolución de reconsideración, de 18 de agosto de 2009, que la solicitud del recurrente fue denegada porque “el hogar propuesto no contaba con sistema telefónico y requería prueba de ADN.” Sobre este extremo, el recurrente nos plantea en su “Réplica al Escrito del Estado” que no es correcto que la residencia propuesta en su plan de salida no tenga sistema telefónico, pues ésta cuenta con una línea telefónica activa hace cuatro (4) años y el teléfono es el (787) 747-5923 para su corroboración. Sobre este señalamiento entendemos que el Programa de Supervisión Electrónica (PIRCO) debe re-evaluar el caso del recurrente, puesto que es de fácil corroboración la información sobre la línea telefónica en la residencia propuesta, según acreditado por el recurrente y ya el 11 de agosto de 2009, se le tomó la prueba de ADN a éste, cumpliéndose así los requerimientos del referido programa.
Proceda el Programa (PIRCO) a re-evaluar el caso del recurrente, en el término de treinta (30) días a partir de la notificación de la presente Sentencia.
Finalmente, plantea el recurrente que los señalamientos previamente discutidos le han violentado el derecho constitucional a la rehabilitación moral y económica, al amparo de la sección 19 del Artículo VI, de la Constitución del Estado Libre Asociado y la Ley del Mandato Constitucional de Rehabilitación, supra.
Resolvemos que los señalamientos previamente discutidos no ameritan que este Tribunal emita un auto de Mandamus según solicitado y que la agencia recurrida cumplió esencialmente su deber ministerial en las diferentes instancias cuestionadas. Con respecto a la impugnación de la resolución de reconsideración de 18 de agosto de 2009, en el caso QZA-748-9 objeto de este caso, resolvemos que la misma relaciona las gestiones realizadas por la agencia para atender los diversos reclamos del recurrente, y que dicha respuesta es adecuada. Esta decisión está basada en el expediente administrativo y las diversas respuestas ofrecidas a sus planteamientos no fueron controvertidas efectivamente por el recurrente, ni en su escrito de Revisión Judicial y Mandamus, ni en su Réplica a Escrito del Estado. [9] Las mismas están basadas en evidencia sustancial que obra en el expediente administrativo. El recurrente no ha demostrado que la Administración de Corrección haya actuado arbitraria o ilegalmente o en forma tan irrazonable que su actuación haya constituido un abuso de discreción. Fuertes y otros v. A.R.P.E., supra.
IV
Por los fundamentos anteriormente expresados, se MODIFICA la resolución recurrida, para que se evalúe el caso del recurrente por el Negociado de Evaluación y Asesoramiento y en cuanto al Programa de Supervisión *763 Electrónica (PIRCO) y así MODIFICADA se CONFIRMA.
Notifíquese.
Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal.
Lie. Dimarie Alicea Lozada
Secretaria del Tribunal de Apelaciones
ESCOLIOS 2009 DTA 20

. (A) Referido a Hogares CREA en 23 de septiembre de 2008- denegado.
(B) Referido a Hogares Cristianos en octubre de 2008 - denegado.
(C) Referido a Programa de Pase Extendido en 10 de junio de 2009 - pendiente.
(D) Referido a Programa de Supervisión Electrónica en 15 de julio de 2009 - denegado.

. El alegato de la parte recurrida hace referencia a un “expediente que se adjunta”, el cual no fue acompañado con éste.

. El alegato de la parte recurrida hace referencia a una Certificación que consta en el expediente de la Junta de Libertad Bajo Palabra acreditando que la misma fue tomada. No fue suministrado por ésta.

. El alegato de la recurrida hace referencia al Informe en el expediente de la Junta, el cual no fue sometido por ésta.

. Nuestra jurisprudencia ha definido un deber ministerial como aquel deber impuesto por la ley que no permite discreción en su ejercicio, sino que es mandatorio e imperativo. Álvarez Choudéns v. Tribunal Superior, 103 D.P.R. 235, 341-242 (1975); Espina v. Calderón, Juez, y Sucn. Espina, Int. 75 D.P.R. 76 (1953); Partido Popular v. Junta de Elecciones, 62 D.P.R. 745, 748 (1944); Great Am. Indem: v. Gobierno de la Capital, 59 D.P.R. 911, 913 (1942); Pueblo v. La Costa, Jr., Juez, 59 D.P.R. 179 (1941).

. Véanse: Medina v. Fernós, Comisionado, 64 D.P.R. 857 (1945); Urdaz v. Padín, Comisionado, 48 D.P.R. 306 (1935); Suárez v. Corte, 65 D.P.R. 850 (1946); Medina v. Fernós, Comisionado, supra, a la pág. 860; Espina v. Calderón, Juez, Sucn. Espina, Int., supra, pág. 81.

. Ley Núm. 170 de 17 de agosto de 1988; Ley de la Judicatura, Artículo 4.004; Ley Núm. 201 de 22 de agosto de 2003.

. El Informe de Ajuste y Progreso tiene fecha de 28 de Julio de 2009, y el Informe del Negociado de Rehabilitación y Tratamiento tiene fecha de 24 de julio de 2009.

. Hacemos excepción del señalamiento relacionado a la consideración de la solicitud del recurrente sobre la evaluación del Programa de Supervisión Electrónica (PIRCO), sobre el cual estamos ordenando una re-evaluación del caso.